## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RONALD EUGENE MATTHEWS II**                    **CIVIL ACTION**

**VERSUS**                                                              **NO.  16-2938**

**TANGIPAHOA PARISH POLICE JURY,**          **SECTION "J"(4)**
**SHERIFF DANIEL EDWARDS,**
**WARDEN LT. DOE FINN, DEPUTY**
**DOE EADY, DEPUTY DOE SOSPHEAS**


### PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2)**, and **§ 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.  On May 17, 2016, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by telephone.[2]  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

I.   **Factual Background**

A.   **Original Complaint**

The plaintiff, Ronald Eugene Matthews, II ("Matthews"), is an inmate who is currently housed at St. Tammany Parish Jail in Covington, Louisiana.[3]  Matthews filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, the Parish of

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims.  The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 11.  The hearing was digitally recorded.

[3]Rec. Doc. No. 1.

Tangipahoa (erroneously named as the Tangipahoa Parish Police Jury) and Sheriff Daniel Edwards, Warden Lt. Finn, Deputy Eady, and Deputy Sospheas, each in their individual and official capacities.[4]

Matthews alleges that, in November of 2015, the Tangipahoa Parish Jail maintained "[a]n intolerable risk of inmate risk of violence."[5]   He claims that the inmates were not properly disciplined or monitored by the jailers.  He further contends that inmates were not segregated based on status or violent nature.   He also contends that inmates could access weapons or fashion weapons from materials made available by the disrepair within the prison.  He further asserts that the sewage leaks from the toilets and showers and the showers were rusted, mildewed and had peeling paint.  He also complained that the jail had cockroaches, spiders and other rodents that would enter through broken windows and cracks in the walls, which were also used by inmates to exchange contraband.

Matthews further claims that, on November 23, 2015, he was involved in a verbal disagreement with a white inmate while working in the kitchen under the supervision of Deputy Eady.  The deputy intervened and physically pushed Matthews through the kitchen and fired him. Matthews exchanged words with the deputy, and the deputy threatened that he would "show you boy."  Deputy Eady then escorted Matthews to the shift supervisor.  Matthews was given regular inmate clothing and escorted by Deputy Cameron Crockett (who is not a named defendant) to a new housing area in U-dormitory.

Matthews claims that the U-dormitory held a mixture of convicted inmates and pretrial detainees.  He also claims that the dormitory was filled with illegal contraband such as synthetic

---

[4]Rec. Doc. No. 1.

[5]Rec. Doc. No. 1, p. 15.

2

marijuana, home-made weapons, cigarette lighters, and cell phones.  Matthews contends that, two days after he arrived in the dormitory, he purchased $150 in commissary items for himself.  He was later approached by an inmate, Devondre Brown, who wanted to borrow a bag of chips.  Matthews refused and a few minutes later, Brown bumped into him.  When he told Brown to excuse himself, Brown punched him in the face.

Matthews claims that Brown was joined in the fight by his older brother, Marlon Brown, and two other inmates, Travious and John Perry, who brutally beat him, kicked him, and struck him with a wooden broom across his back.  Matthews alleged that, while he was on the ground being beaten, kicked, and punched, three of the men pulled his pants down and John Perry attempted to force the broom stick into Matthews's rectum.  Matthews defecated on himself and was rendered unconscious.  Matthews claims that he was then pulled into the shower area and forced by the four men to clean himself up.

At some point, another inmate alerted the deputy, and ten or fifteen minutes later, Deputy Crockett responded to the incident and escorted Matthews to the medical staff.  While there, Warden Finn was summoned and had Matthews complete an incident report.  Matthews was then transported by Deputy Dubach to North Oaks Medical Center in Hammond, Louisiana, where he remained for the next few days.  Matthews was diagnosed with a broken mandible, fractured shoulder, and rectum irritation.  He was returned to the jail on December 4, 2015, with orders that he receive medication and a liquid diet.  He also claims that he was scheduled for surgery on his jaw on December 7, 2015.

Upon his return to the jail that day, he gave a recorded statement to Detective Covan Banks and was placed in a holding cell.  While in the holding cell, he did not receive medical attention, medication, or a liquid diet.  He complained about the diet but the prison officials declined to

provide him with anything other than the ordinary diet.  Matthews claims that he was later told by another inmate-trusty that Deputy Eady paid the inmates with synthetic marijuana and extra food to attack him.

Matthews further alleges that, on December 6, 2015, he was sent to Lallie Kemp Medical Center because of excessive fever of 106 degrees, severe pain, and bleeding from the mouth.  He was driven there by Deputy Sospheas, who failed to properly secure him inside of the vehicle which caused him to move around.  Upon arrival at the hospital, the deputy told Matthews to get out of the vehicle.  Matthews claims that he told the deputy he needed assistance.  He claims that the deputy cursed him and then grabbed his hurt arm to pull him from the vehicle.  Matthews claims that he was pulled out of the van and fell to the ground.  At that time, Deputy Sospheas picked him up to walk into the hospital.  Matthews also claims that he was treated for fever, dehydration, and pain before he was returned to the prison.

Matthews claims that on December 7, 2015, instead of being taken for his jaw surgery, he was released into the custody of the St. Tammany Parish Sheriff's Office on a pending detainer. Before leaving, Matthews also was issued a summons to appear in Tangipahoa for a charge of simple battery upon Deputy Eady which apparently was related to their earlier confrontation. Matthews also inquired about his personal belongings and commissary items before he was transferred, but he did not receive a response.

Matthews alleges that he eventually received surgery on his jaw on December 17, 2015, and on his shoulder on March 7, 2016.  He claims that he continues to suffer from his physical injury and pain.  He seeks compensatory and punitive damages and unspecified injunctive relief for the defendants' intentional indifference to the substantial risk of harm at the jail and to his serious medical needs, and failure to maintain the jail as required under state law.

B.      The *Spears* Hearing

Matthews testified that, at the time, he was incarcerated awaiting a probation revocation hearing scheduled for July 17, 2016.  He stated that, in December of 2015, he was beaten by four inmates while he was housed in the Tangipahoa Parish Jail.  He recalled that he previously was a trusty assigned to a kitchen position.  On November 23, 2015, he had a verbal disagreement with another inmate in the kitchen.  Deputy Eady, the kitchen supervisor, intervened and removed Matthews from the kitchen and his trusty position.  Matthews claims that he tried to explain what happened, but Deputy Eady refused to listen and told him to get his "black ass out of his kitchen." Deputy Eady had him retrieve regular inmate clothing and moved him out of the trusty dormitory. Deputy Crockett escorted Matthews to a general population housing unit.

Matthews recalled that, several days later on December 2, 2015, inmate Devondre Brown asked to borrow a bag of chips, and Matthews told him he had none to loan him.  Later, Brown bumped into Matthews, and when Matthews said "excuse you," Brown turned around and struck Matthews in the face.  Brown's brother Marvin and their cousins, John and Travious Perry, joined in the fight.

Matthews stated that, at the time, the deputies were in the pod or watchtower unaware of what was happening in spite of the crowd of inmates.  Matthews claimed that the Browns and the Perrys beat him severely, knocked him to the ground, and continued to kick, punch, and beat him. He stated that John Perry repeatedly hit him with the handle of a wooden broom, while the others pulled his pants down.  John Perry then forced the wooden broom handle into Matthews's rectum, and Matthews blacked out.  When he came to, he found that he had used the bathroom on himself and the attackers had dragged him to the shower to force him to clean himself up.  They told him to tell the deputies that he fell in the shower.

5

The other inmates became concerned about his injuries and one or more inmates banged on the window to get the guards attention because the intercom system did not work.  Once the deputy saw them, he called medical personnel to decide what to do.  Matthews claims that it took ten or fifteen minutes before Deputy Crockett came to get him to take him to the medical infirmary.

Matthews stated that he at first told the medical personnel that he fell, but he later broke down and told them he was beaten.  They sent for the Warden who requested that Matthews fill out an incident report.  Matthews then was sent to the hospital.  Deputy Dubach took him to the North Oaks Medical Center, where he stayed for about two and one-half days.  He was diagnosed with and treated for a broken mandible, fractured shoulder, and rectum irritation.

Matthews further claimed that the doctors wanted him to remain in the hospital but the Warden kept calling because he did not want to pay any unnecessary medical bills.  The doctors determined that he had no real medical reason to stay, and he was sent back to the Tangipahoa Parish Jail to await surgery.  The hospital doctors ordered that he receive a liquid diet, pain medication, and report for mandible surgery in New Orleans on December 7, 2015.

Matthews recalled that, once back at the jail, he was interviewed by Detective Banks to whom he gave a recorded statement.  He was then placed in a holding cell where he did not receive medical attention, pain medication, water, or a liquid diet.  In the holding cell, he was provided only a regular diet.  He stated that he was told by the medical staff, kitchen personnel, and the shift supervisor that no special accommodations could be made unless it were a life or death situation, and he would have to eat what the kitchen served.

At some point, a guard noticed that his mouth was bleeding and brought him to the medical unit.  The nurse found that he had a fever of 106 degrees and had him transported to Lallie Kemp Medical Center in Independence, Louisiana.  He was taken there by Deputy Sospheas, whom he

claims was arrogant.  In spite of his injuries, the deputy handcuffed him and placed him in shackles for the ride to the hospital.  He also placed Matthews in the transport van without securing his seatbelt, causing him to slide around during the ride.  When they arrived at the hospital, the deputy ordered Matthews out of the van and Matthews refused to do so without help.  Matthews claims that the deputy got irritated and cursed at him.  The Deputy then pulled Matthews by his hurt arm, causing him to fall out of the van to the ground.  Deputy Sospheas picked Matthews up and walked him into the emergency room.  Matthews claims that the doctors treated him for dehydration and gave him Motrin for fever and hydrocodone for pain.  Because he was scheduled for surgery the next day, he was soon returned to the jail.

Matthews testified that he was not taken for surgery as scheduled.  Instead, on the morning of December 7, 2015, the St. Tammany Parish Sheriff's Office picked him up on the detainer on which he was being held.  Upon his arrival at the St. Tammany Parish Jail, he was seen by medical personnel, who contacted the Tangipahoa Parish Jail to obtain information about his condition.  A nurse named Corporal Boyd also took his statements regarding the prior incident and his medical needs.  The St. Tammany personnel scheduled a new surgery date at the University Medical Center in New Orleans, which was held on December 17, 2015.  He was held in the medical unit until the surgery, and he was provided with medical attention and a liquid diet.  Matthews also stated that he was visited in March of 2016, at the St. Tammany Parish Jail by a detective who said the District Attorney's Office was pursuing criminal charges against the inmates who beat him in Tangipahoa.

Matthews testified that he filed three administrative grievance complaints related to this incident and received no responses because he was transferred to St. Tammany.  He filed one complaint against Deputy Eady for removing him from his kitchen trusty position on November

23, 2015. The second grievance complaint concerned the attack by the four inmates. The third grievance involved the failure to provide him with a liquid diet.

Matthews stated that he sued Sheriff Edwards because he is the official who oversees the operations of the jail and is responsible for the general supervision and control of the jail. He also sued Warden Finn because he is responsible to oversee the deputies at the jail and for enforcing the sheriff's rules.

Matthews named Deputy Eady as a defendant because he was racially prejudiced towards him, and pushed on him and ordered him out of the kitchen. Matthews conceded that he was not physically hurt at that time. He claimed, however, that a trusty named "Job" told him that Deputy Eady was the one who was not providing him with a liquid diet and had sent synthetic marijuana and extra food to the dormitory to get the other inmates to beat him up. Matthews claims that Job knew this because he was tied in with the guards and deputies at the jail.

Matthews stated that he named Deputy Sospheas as a defendant because the Deputy failed to secure him into the transport van and cursed at him with racial slurs. He also felt that it was unnecessary for the Deputy to put him in handcuffs and shackles due to his injuries, and to fail to help him out of the van when they got to the hospital. Matthews asserted that the Deputy demonstrated unprofessional and unethical behavior when he pulled him from the van.

## II.    **Standards of Review for Frivolousness**

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte*

dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.   Analysis

### A.   Tangipahoa Parish Police Jury and Tangipahoa Parish

Although Matthews initially named the Tangipahoa Parish Police Jury as a defendant, the Tangipahoa Parish has answered the lawsuit declaring that it was "misnamed" as the police jury. In fact, there is no such entity as the Tangipahoa Parish Police Jury within the local government, and it is not an appropriate defendant for suit under § 1983. *See Rogoz v. Tangipahoa Parish Council*, No. 2010-CA-1831, 2011 WL 1944103, at *2 (La. App. 1st Cir. May 6, 2011) (Noting that Tangipahoa Parish adopted its home rule charter effective October 27, 1986, creating the Tangipahoa Parish Council as the governing body.) Furthermore, even if such an entity existed,

Matthews has failed to assert a cognizable § 1983 claim against the Tangipahoa Parish Police Jury. Section 1983 liability of an entity such as a police jury must be premised upon a custom or policy that caused a constitutional violation. *Rainwater v. 36th Judicial Court*, No. 06-0346, 2006 WL 2714435, at *3 (W.D. La. Aug. 10, 2006) (citing *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). Plaintiff has not asserted any such allegations of policy or a specific constitutional violation by this entity, if such an entity were to exist, and therefore has failed to state a cognizable § 1983 claim. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). The claims against the Tangipahoa Parish Police Jury are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A.

For similar reasons, and assuming Matthews intended to sue the Parish of Tangipahoa, the claims against the Parish also are frivolous and otherwise fail to state a claim for which relief can be granted. Local governing bodies like the Parish are "persons" within the meaning of § 1983 and therefore, are subject to suit under that provision. *Monell*, 436 U.S. at 694. However, a local governing body may not be held vicariously liable for the actions of its employees; rather, it can be liable only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible." *Id.* Similarly, actions of officers or employees of a municipality or local authority do not render the municipality or local authority liable under § 1983 unless they act in execution of an official policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *on reh'g*, 739 F.2d 993 (5th Cir. 1984); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).

A plaintiff also must identify the particular policy or custom which allegedly caused the deprivation of his constitutional rights. *See*, *e.g.*, *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003). "A plaintiff may

not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993). A plaintiff also must allege not merely that an unconstitutional policy or custom exists, but that it was the proximate cause of his injury. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds*, *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986). Thus, "'[m]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.'" *Zarnow v. City of Whichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *Cox v. City of Dallas,* 430 F.3d 734, 748 (5th Cir. 2005) (same).

A policymaker is "one who takes the place of the governing body in a designated area of city administration." *Webster*, 735 F.2d at 841. He or she must "decide the goals for a particular city function and devise the means of achieving those goals." *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). Matthews has not identified or named as a defendant any particular policymaker with the authority to make policies on behalf of the Parish of Tangipahoa.

Matthews has not pointed to any specific policy promulgated by the Parish which led to the alleged violation of his constitutional rights by the prison deputies. He also has not presented or referenced any such policy or provided any indication that the Parish is responsible for any policies implemented within and by the prison staff.

Matthews also has not established any particular pattern or practice condoned by the Parish or its officials which would amount to an unconstitutional policy at the Tangipahoa Parish Jail. *Webster*, 735 F.2d at 841. Simply naming a municipal defendant is not sufficient to be the foundation of a plausible claim under *Monell*. On the contrary, it is well settled that, in Louisiana,

the Parish is not responsible for the torts, constitutional or otherwise, committed by a sheriff and his employees. *Salvagio v. Doe*, No. 13-5182, 2013 WL 6623921, at *2-3 (E.D. La. Dec. 16, 2013) (Vance, C.J.) (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999)); *Broussard v. Boudoin*, No. 03-3040, 2004 WL 223984, at *1 (E.D. La. Jan. 29, 2004) (Shushan, M.J.); *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998).

For the foregoing reasons, Matthews's claims if any against the Tangipahoa Parish Police Jury and/or Tangipahoa Parish are frivolous and otherwise fail to state a claim for which relief can be granted. The claims must be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

### B.      Defendants Edwards, Finn, Eady, and Sospheas in Their Official Capacities

Matthews has named each of the defendants, Sheriff Edwards, Warden Finn, Deputy Eady, and Deputy Sospheas, in their official capacities. For the following reasons, claims against these defendants in their official capacities are the same as suit against the Parish itself and are frivolous for the reasons set forth regarding the Parish of Tangipahoa.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge*, 187 F.3d at 466 (citing *Monell*, 436 U.S. at 691 n.55). Accordingly, the official-capacity claims against these defendants would in reality be claims against the local governmental body they serve, which is Tangipahoa Parish. As previously discussed in detail above, Matthews has failed to allege a *Monell* claim against the Parish of Tangipahoa and necessarily is unable to do so against the Sheriff, the Warden, and two Deputies in their official capacities. Where the plaintiff fails to allege that the purported violations at issue resulted from an official policy or custom, dismissal of such claims is appropriate. *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Meadowbriar Home for Children, Inc. v.*

*Gunn*, 81 F.3d 521, 533 (5th Cir. 1996); *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 905-06 (E.D. La. 2001).

Matthews's claims against Sheriff Edwards, Warden Finn, Deputy Eady, and Deputy Sospheas, in their official capacities, should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted in accordance with § 1915(e), § 1915A and § 1997e.

### C.     Sheriff Edwards and Warden Finn in Their Individual Capacities

Matthews names Sheriff Edwards and Warden Finn in their individual capacities, although he testified that he named each of them in their roles as overseers of the jail and the deputies.  To recover under § 1983 for individual liability, Matthews must identify both the constitutional violation and the responsible person acting under color of state law.  *See Flagg Bros., Inc.*, 436 U.S. at 156.  Also, proof of an individual defendant's personal involvement in the alleged wrong is a prerequisite to liability under §1983.  *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981).  Thus, supervisory officials, like Sheriff Edwards and Warden Finn cannot be held responsible pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.  *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability.").  A defendant is liable under § 1983 only if he had personal involvement in the alleged unconstitutional act.  *Douthit*, 641 F.2d at 346.

In this case, Matthews does not suggest that Sheriff Edwards or Warden Finn were personally involved in the violation of his constitutional rights or that he personally advised the Sheriff or Warden of any unconstitutional condition to which he was personally exposed and either failed to take action.  Matthews even testified that Warden Finn took action immediately upon

learning of the attack upon him.  Matthews simply included the Sheriff and the Warden in their supervisory roles at the jail.  This is not an appropriate basis for liability under § 1983.

Matthews also has not alleged that he has suffered any injury directly resulting from any order, training, or other unconstitutional policy implemented by Sheriff Edwards or Warden Finn that would create a vicarious liability under § 1983 in a supervisory role.  *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

Matthews has not alleged a personal action or connection that would render Sheriff Edwards or Warden Finn liable under § 1983 or liable for the actions or inactions of the prison personnel.  For these reasons, Matthews's claims against the Sheriff and Warden in their individual capacities as supervisors over the prison are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

### D.    <u>Deputy Sospheas in His Individual Capacity</u>

Matthews has also named Deputy Sospheas in his individual capacity as liable under § 1983 for his use of racial slurs, the use of handcuffs and shackles to transport him to the hospital in spite of his injuries, the failure to secure him in the van, and the use of force to pull him from the van by his injured arm causing him to fall onto the ground.

### a.    <u>Racial Slurs</u>

As an initial matter, Matthews's complaints that Deputy Sospheas cursed at him and used racial slurs is not an actionable claim under § 1983.  To state a claim under § 1983, a plaintiff must allege the violation of a constitutional right.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Verbal abuse and the use of even threatening language and gestures by a prison guard do not amount to a

constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (quoting *Coyle v. Hughs*, 436 F. Supp. 591, 593 (W.D. Okl. 1977)); *Robertson v. Plano City of Tex.*, 70 F.3d 21, 24 (5th Cir. 1995). Matthews's claim for use of racial slurs against Deputy Sospheas is frivolous and otherwise fails to state a claim for which relief can be granted and can be dismissed pursuant to 28 U.S.C. § 1915, §1915A and 42 U.S.C. § 1997e.

### b.    Use of Restraints

Matthews also contends, under a broad construction, that the use of handcuffs and shackles to transport him to the hospital was excessive and unnecessary due to his injured state. However, the mere use of restraints to transport a prisoner outside of the prison in a good faith effort to maintain safety and security does not state a cognizable claim under § 1983. *Nubine v. Stringfellow*, 240 F.3d 1074, 2000 WL 1835288, at *1 (5th Cir. Nov. 28, 2000) (Table, Text in Westlaw) ("The shackling of Nubine during transport constituted a rational security measure."); *see Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *see also*, *Liberto v. Mandeville City*, No. 15-7158, 2016 WL 5724599, at *5 (E.D. La. Sep. 30, 2016). Matthews has failed to establish a constitutional violation arising from the use of the restraints during his transport to the hospital.

Matthews's claim for the unnecessary use of restraints against Deputy Sospheas is frivolous and otherwise fails to state a claim for which relief can be granted and can be dismissed pursuant to 28 U.S.C. § 1915, §1915A and 42 U.S.C. § 1997e.

### c.    Remaining Claims of Indifference and Excessive Force

Matthews also alleges other actions by Deputy Sospheas that are not clearly frivolous at this time. He claims that the Deputy was indifferent to his safety when he did not secure him in the van and used unnecessary and excessive force when he pulled him from the van by his injured

arm causing him to fall to the ground.  Matthews alleges that, at the time of these incidents, he was being held for a revocation hearing after a probation violation on a prior conviction.  In this Circuit, Matthews could be considered a pretrial detainee.  *See Mitchell v. Cervantes*, 453 F. App'x 475, 477 n.1 (5th Cir. 2011); *Flores v. Ramierez*, No. 13-CV-418, 2014 WL 3050146, at *13 (W.D. Tex. July 3, 2014); *Ellis v. Crowe*, No. 09-3061, 2010 WL 724158, at *14 (E.D. La. Feb. 19, 2010) (order adopting Report and Recommendation).

A pretrial detainee is protected against mistreatment at the hands of prison officials under the Due Process Clause of the Fourteenth Amendment.  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996); *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).  In *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466 (2015), the United States Supreme Court held that excessive force claims brought by a pretrial detainee must be analyzed under a Fourteenth Amendment standard of objective reasonableness without need to consider a subjective component that takes into account a defendant's state of mind.  *Id.*, at 2472-73.  Neither the Supreme Court nor the Fifth Circuit has determined whether or to what extent the holding in *Kingsley* may affect the deliberate indifference standard for claims concerning a pretrial inmate's health or safety.  Absent further guidance, the Court will continue to apply the deliberate indifference analysis to claims concerning a pretrial detainee's health and safety other than one of excessive force.

### 1.    <u>Indifference to Safety</u>

With regard to Matthews's claim that Deputy Sospheas failed to secure him in the transport van, the question is "whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge, and intentionality is no longer presumed."  *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 463 (5th Cir. 2015) (internal quotation marks omitted) (citing *Hare*, 74 F.3d at 645); *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006).  For such a violation

to be found, the official, in this case Deputy Sospheas, must have "subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference." *Hare*, 74 F.3d at 650.  Generally, "[d]eliberate indifference is shown when the official knows of and disregards an excessive risk to inmate health or safety," and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Henson*, 440 F. App'x at 343.

At this point in the proceedings, the Court has before it Matthews plausible allegations that his physical condition, including high fever, a bleeding mouth, and a fractured shoulder/arm in a sling, combined with the handcuffs and shackles was sufficient for Deputy Sospheas to have known and drawn an inference that Matthews would not be able to maintain a safe balance in the moving vehicle and faced the danger of injury in the van.  At this time, the facts alleged are sufficient for Matthews's claim, as a pretrial detainee, to proceed past the Court's initial screening and review for frivolousness.  *See Rogers v. Boatright*, 709 F.3d 403, 408 (5th Cir. 2013) (error to dismiss as frivolous claim of endangerment for failure to secure an inmate in a transport van).

## 2. Excessive Force

A similar resolve applies to Matthews claim, as a pretrial detainee, that Deputy Sospheas used excessive force in forcing his exit from the van once at the hospital.  Under *Kingsley*, a pretrial detainee like Matthews must show only that the use of force was "objectively unreasonable." *Kingsley*, 135 S. Ct. at 2470.  The reasonableness of the force turns on "whether the force was unnecessary - not whether the use of force was so unnecessary as to show the requisite state of mind to support an Eighth Amendment excessive force claim." *Thompson v. Beasley*, 309 F.R.D. 236, 247 (N.D. Miss. 2015); *Brown v. Gusman*, No. 15-1491, 2015 WL 6827260, at *5 (E.D. La. Nov. 6, 2015).

Under the *Kingsley* standards, the question is whether the defendant's actions were "'rationally related to a legitimate nonpunitive governmental purpose'" of maintaining order and discipline in the jail. *See Thompson*, 309 F.R.D. at 247 (quoting *Kingsley*, 135 S. Ct. at 2473). The Supreme Court provided some considerations to be addressed by a reviewing court in resolving this question:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *See, e.g., Graham [v. Connor*, 490 U.S. 386, 396 (1989)]. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Kingsley*, 135 S. Ct. at 2473.

Based on the allegations and testimony from the plaintiff, the Court cannot find at this point in the litigation whether the force used by Deputy Sospheas to pull him from the van by his injured arm, causing him to fall to the ground, was objectively reasonable or necessary under the circumstances. There did not appear to be any threat to the Deputy or any effort to use an alternative means (pull on the uninjured arm) to assist Matthews from the van. While the plaintiff's allegations may suggest that there was a legitimate need for him to cooperate, the need for the alleged force is not yet clear from the record before the Court. Considering the alleged extent of the plaintiff's injuries and ailments at the time, along with the discomfort and potential injury from the pull and fall, the Court cannot find at this time that Matthews's claim of excessive force is clearly frivolous. For this reason, the Court should allow the excessive force claim against Deputy Sospheas to proceed forward.

### E.    Deputy Eady in His Individual Capacity

Matthews sued Deputy Eady in his individual capacity under § 1983 for his alleged use of racial slurs, the denial of a liquid diet, the use of force to push him out of the kitchen, and the indifference to his physical safety by paying inmates to beat him.  As addressed previously, Matthews claims that Deputy Eady cursed at him or used racial slurs is not an actionable claim under § 1983 as it fails to present a constitutional violation.  *Siglar*, 112 F.3d at 193; *McFadden*, 713 F.2d at 146.  That claim can be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted.

### a.    Excessive Force in the Kitchen on November 23, 2015

Matthews claims that Deputy Eady used excessive force against him when he pushed him through the kitchen to separate Matthews and the other inmate and removed Matthews from the kitchen area on November 23, 2015.  As a probation/pretrial detainee, Matthews's claims are addressed under *Kingsley*'s "objectively unreasonable" standard.  *Kingsley*, 135 S. Ct. at 2470.  As discussed above, per *Kingsley*, the question is whether Deputy Eady's actions were "'rationally related to a legitimate nonpunitive governmental purpose'" of maintaining order and discipline in the jail.  *See Thompson*, 309 F.R.D. at 247 (quoting *Kingsley*, 135 S. Ct. at 2473).  The Court may also consider the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made to temper the amount of force, the severity of the security problem and the threat reasonably perceived by the officer, and the plaintiff's level of resistance.  *Kingsley*, 135 S. Ct. at 2473.

Based on Matthews's claims and testimony, he has failed to present an excessive force claim under the foregoing considerations.  As described by Matthews, he was involved in an altercation with another inmate while working in the kitchen under Deputy Eady's supervision.

Deputy Eady intervened in the dispute to separate Matthews and the other inmate. Matthews admittedly resisted Eady's efforts to move him away insisting that he be given a chance to explain his side of the argument. Eady then pushed him to move him through and out of the kitchen in an effort to regain discipline and control of the situation. Matthews testified that he was not physically injured and instead suffered only upset from his inability to get Eady to listen to his side of the dispute. Under 42 U.S.C. § 1997e, Matthews cannot recover for such mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596 (1998).

The facts alleged by Matthews fail to state an objective basis for an excessive force claim under *Kingsley*.[6] Matthews's claim of excessive force on November 23, 2015, against Deputy Eady is frivolous and otherwise fails to state a claim for which relief can be granted and can be dismissed pursuant to 28 U.S.C. § 1915, §1915A and 42 U.S.C. § 1997e.

### b.    Indifference to Health and Safety

As outlined previously, assuming his status as a pretrial detainee, Matthews's constitutional rights flow from the guarantees of the Fourteenth Amendment because persons of that status are not subject to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hare*, 74 F.3d at 639. The question therefore becomes whether the defendant breached a constitutional duty to provide the plaintiff with basic human needs, without regard for his intent. *Hare*, 74 F.3d at 640; *Estate of Henson*, 795 F.3d at 463. For Matthews to state a non-frivolous claim in this case, he

---

[6]The Court also notes that Matthews indicated that, while in Tangipahoa Parish Jail, he was served with a summons for the charge of battery on Deputy Eady. If that charge is related to the incident in the kitchen, and is pending or Matthews has been convicted, any claim by Matthews of excessive force would be barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that civil rights claims are barred if success on those claims would necessarily imply the invalidity of a conviction or present confinement) and/or *Wallace v. Kato*, 549 U.S. 384, 393 (2007) (if the plaintiff's conviction was not yet final, the district court can stay the civil action until the criminal case is ended.). *See also*, *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995).

must have alleged Deputy Eady had "subjective knowledge of a substantial risk of serious harm" to his health and safety and that Eady "responded to that risk with deliberate indifference." *Hare*, 74 F.3d at 650.  As previously discussed, deliberate indifference exists when an official knows of and disregards an excessive risk to inmate health or safety.  *Id*.; *Estate of Henson*, 440 F. App'x at 343.  In this case, Matthews has alleged sufficient facts against Detective Eady to survive the Court's initial screening.

## 1.   <u>Denial of a Liquid Diet</u>

Matthews alleges that Deputy Eady, the kitchen supervisor, knew that he had been ordered to have a liquid diet to accommodate the pre-surgical broken mandible and that it was medically necessary because of the broken mandible.   Deliberate indifference with regard to medical treatment requires the plaintiff to show that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (citation omitted).

Matthews testified that he made repeated requests for the liquid diet, including request to the kitchen supervisors and other officials, to no avail.  He also claims that he learned from another inmate trustee that Deputy Eady would not allow the accommodation and instead sent Matthews a regular diet tray knowing he could not eat it.  As a result of his inability to eat, Matthews alleges that he became severely dehydrated causing the high fever which required medical treatment.

On the record before the Court at this time, Matthews has at least alleged an actionable constitutional claim tending to establish that Deputy Eady was deliberately indifferent to his serious medical needs by refusing to provide the liquid diet.  This claim should be allowed to proceed further, at least beyond the screening for frivolousness.

## 2. __Inciting Other Inmates__

As an additional claim against Deputy Eady, Matthews claims that the same inmate trusty advised him that Deputy Eady gave the Browns and Perrys synthetic marijuana and extra food to incite them to brutally beat Matthews.  A plaintiff at least states a claim of deliberate indifference to his safety when he alleges "that a prison official intended to cause him serious harm by inciting other inmates to do violence against him."  *Purkey v. Green*, 28 F. App'x 736, 745 (10th Cir. 2001); *see also*, *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004) ("[C]onduct intended to injure most likely will rise to the level of conscience-shocking."). For this reason, "[w]hen a prison guard incites other prisoners to beat a fellow inmate, 'it is as if the guard himself inflicted the beating as punishment.'"  *Jones v. St. Lawrence*, No. CV408-095, 2008 WL 5142396, *5 (S.D. Ga. Dec.5, 2008) (quoting *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992)); *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir.1991).  In asserting this type of claim under the Fourteenth Amendment through an allegation of incitement of inmate violence by a prison guard, the plaintiff will have to establish an inference that he faced "a substantial risk of serious harm" and that the responsible prison official intended that he be harmed or was at least consciously indifferent to his safety.  *Jones*, 2008 WL 5142396, at *5 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

In this case, Matthews has alleged a wanton disregard for his safety where he claims that Deputy Eady intended to do him harm by inciting and paying inmates to beat him.  At this stage of the proceedings, and in light of his severe injuries after the beating, it appears that Matthews has at least stated a claim worthy of further proceedings.  As one circuit court has held, a prisoner's allegation that a correctional officer has endangered his life by exposing him to a real threat of inmate attack is "sufficient to carry [the] cause of action through the service of process stage."

*Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984).  This claims should be allowed to proceed, at least beyond this review for frivolousness.

### F.    Overall Conditions of Confinement

Matthews also includes vague references to certain unsanitary conditions at the Tangipahoa Jail, and other general references to classification of inmates and the presence of inmate-fashioned weapons in the prison.  Even under a broad reading of the complaint and based on his testimony at the *Spears* Hearing, it appears that Matthews included these comments as a general description of the jail and not as specific claims he is pursuing.  At no point has Matthews alleged that he was personally impacted by the alleged conditions, that he was ever threatened by a weapon, or that an homemade weapon was used during the events forming the basis of this complaint.

Nevertheless, in addressing this type of challenge to the conditions of his confinement, it is a basic premise that a pre-trial detainee like Matthews cannot be punished by prison officials.  *Bell*, 441 U.S. at 535.  Therefore, the proper inquiry is whether the complained of conditions amount to punishment of the detainee.  *Id*.  "[A] pre-trial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose."  *Hare*, 74 F.3d at 640.

To determine whether a condition of detention amounts to punishment, the Court must consider whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate governmental purpose and whether it is excessive in relation to that purpose.  *Bell*, 441 U.S. at 538.  However, for all detainees, "'[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned.'"  *Bell*, 441 U.S. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).  "The Constitution does not mandate comfortable

prisons ... but neither does it permit inhumane ones." *Harper*, 74 F.3d at 719 (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995)).

Matthews claims that conditions at the Tangipahoa Parish Jail were unsafe because of the housing together of inmates with different classifications and because of the availability of homemade weapons. As noted above, Matthews has not alleged more than conclusory assertions that weapons were readily available in the prison or that he has been exposed to or threatened by any such weapon. This conclusory claim is insufficient to establish an unconstitutional condition.

With regard to inmate placement, Matthews claim also fails to provide any particular description of how he was exposed or harmed in anyway by inmate classification. It is constitutionally permissible to house pretrial detainees like Matthews, who have a prior criminal history, with convicted prisoners, rather than with pretrial detainees without criminal histories. *See Arps v. Callahan*, No. 93-1066, 1993 WL 13626754, at *3 (5th Cir. Aug. 2, 1994) ("[A] policy of classifying pretrial detainees with prior felony convictions with other convicted felons is reasonably related to the Jail's interest in maintaining jail security."). His conclusory claim fails to establish a violation of his constitutional rights.

He also has failed to allege a constitutional violation with respect to his claims of unsanitary or unclean conditions in the showers and certain areas of the jail. The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). The Courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). In keeping with this philosophy, the federal courts have recognized that certain problems endemic to

large institutions such as rust, dust, mold, and stale air do not amount to a constitutional violation. *See*, *e.g.*, *White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted*, 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012).  The jurisprudence has repeatedly held that the general unsanitary conditions, even the presence of mold and dampness in a prison setting, does not render an inmate's confinement unconstitutional.  *See*, *e.g.*, *Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *adopted*, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (quotation marks omitted) (complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned").

Thus, Matthew's conclusory allegations about unsanitary conditions fail to establish constitutional violation or that the conditions amounted to punishment.  "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional."  *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, fifty-two inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitary living quarters, failed to state a claim.).  As one federal appellate

court has concluded, "[l]eaky toilets and puddles are unpleasant but not unconstitutional." *Smith v. Melvin*, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. Jul. 26, 1996); *accord Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010); *Wilkerson v. Champagne*, No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

For the foregoing reasons, Matthews's condition of confinement claims are frivolous and otherwise failed to present a claim for which relief can be granted. The claims should be dismissed for this reason pursuant to 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

## IV.   Recommendation

It is therefore **RECOMMENDED** that Matthews's § 1983 claims against the Tangipahoa Parish Police Jury and/or Tangipahoa Parish and against Sheriff Edwards, Warden Finn, Deputy Eady, and Deputy Sospheas, each in their official capacity, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Matthews's § 1983 claims against Sheriff Edwards and Warden Finn, each in their individual capacity, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Matthews's § 1983 claims for use of racial slurs and use of restraints against Deputy Sospheas, in his individual capacity, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915, §1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Matthews's § 1983 claims for use of racial slurs and excessive force on November 23, 2015, against Deputy Eady, in his individual capacity, be

**DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915, §1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Matthews's § 1983 condition of confinement claims be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Matthews's § 1983 claims of intentional indifference to his safety and use of excessive force against Deputy Sospheas in his individual capacity and his § 1983 claims of intentional indifference to his health (denial of the liquid diet) and safety (inciting the inmate attack) against Deputy Eady in his individual capacity be referred back to the undersigned Magistrate Judge for further pretrial proceedings after addressing this Report and Recommendation.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[7]

New Orleans, Louisiana, this 13th day of December, 2016.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[7]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.