UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD EUGENE MATTHEWS II** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-2938** |
| **TANGIPAHOA PARISH POLICE JURY, SHERIFF DANIEL EDWARDS, WARDEN LT. DOE FINN, DEPUTY DOE EADY, DEPUTY DOE SOSPHEAS** | **SECTION "J"(4)** |

### ORDER AND REASONS

Before the Court is the plaintiff's **Motion for Leave to File Second Amended Complaint (Rec. Doc. No. 35)**, seeking leave to include additional defendants, properly identify certain defendants, and add certain state law claims. The motion was referred to a United States Magistrate Judge and submitted without opposition on August 16, 2017.

### I.   Factual and Procedural Background

The plaintiff, Ronald Eugene Matthews, II ("Matthews"), at all relevant times was a pretrial detainee housed in the St. Tammany Parish Jail in Covington, Louisiana.[1] Matthews initially filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the Tangipahoa Parish Police Jury, Sheriff Daniel Edwards, Warden Lt. Finn, Deputy Eady, and Deputy Sospheas, each in their individual and official capacities.[2] Matthews alleges that, in November of 2015, the Tangipahoa Parish Jail maintained "[a]n intolerable risk of inmate risk of violence."[3] He claims that the inmates were not properly disciplined or monitored by the jailers. He further contends

---

[1] Rec. Doc. No. 1.

[2] Rec. Doc. No. 1.

[3] Rec. Doc. No. 1, p. 15.

that inmates were not segregated based on status or violent nature and could access weapons or fashion weapons from materials made available by the disrepair within the prison.

Matthews, an African-American, further claims that on November 23, 2015, he was involved in a verbal disagreement with a white inmate while working in the kitchen under the supervision of Deputy Eady. The deputy intervened and physically pushed Matthews through the kitchen and fired him. Matthews exchanged words with the deputy, and the deputy threatened that he would "show you boy."[4] Deputy Eady then escorted Matthews to the shift supervisor. Matthews was given regular inmate clothing and escorted by Deputy Cameron Crockett (who is not a named defendant) to a new housing area in U-dormitory.

Matthews also contends that two days after he arrived in the dormitory, he purchased $150 in commissary items for himself and that he was approached by inmate Devondre Brown, who wanted to borrow a bag of chips. Matthews refused, and a few minutes later, Brown bumped into him. When he told Brown to excuse himself, Brown punched him in the face. Matthews was subsequently jumped by Brown and three other inmates, who brutally beat and kicked him and struck and poked him with a wooden broom handle, until he eventually lost consciousness. Matthews claims that he later was told by another inmate-trusty that Deputy Eady paid the inmates with synthetic marijuana and extra food to attack him.

After completing the incident report, Matthews was transported by Deputy Dubach to North Oaks Medical Center in Hammond, Louisiana, where he remained for the next few days. Matthews was diagnosed with a broken mandible, fractured shoulder, and rectal irritation. On December 4, 2015, Matthews returned to the jail with medical orders that he receive medication and a liquid diet and was scheduled for surgery on his jaw on December 7, 2015.

---

[4] Rec. Doc. No. 1, p. 15.

Upon his return to the jail that day, Matthews alleges that he did not receive medical attention, medication, or a liquid diet. Matthews complained about the diet, but the prison officials declined to provide him with anything other than the ordinary diet.

Matthews further alleges that, on December 6, 2015, he was sent to Lallie Kemp Medical Center because of excessive fever of 106 degrees, severe pain, and bleeding from the mouth. Matthews was driven there by Deputy Sospheas, who failed to properly secure him inside of the vehicle, which caused him to move around. Upon arrival at the hospital, Deputy Sospheas told Matthews to get out of the vehicle. Matthews claims that he told the Deputy Sospheas he needed assistance, and Deputy Sospheas cursed him and then grabbed his hurt arm to pull him from the vehicle. Matthews claims that he was pulled out of the van and fell to the ground. At that time, Deputy Sospheas picked him up to walk into the hospital. Matthews also claims that he was treated for fever, dehydration, and pain before he was returned to the prison.

Matthews asserts that, on December 7, 2015, he was released into the custody of the St. Tammany Parish Sheriff's Office on a pending detainer. Matthews alleges that he eventually received surgery on his jaw on December 17, 2015, and on his shoulder on March 7, 2016. He claims that he continues to suffer from his physical injury and pain. As a result, Matthews seeks compensatory and punitive damages and unspecified injunctive relief for the defendants' intentional indifference to the substantial risk of harm at the jail and to his serious medical needs, and their failure to maintain the jail as required under state law.

Matthews eventually was granted leave to amend his original *pro se* complaint to name the Parish of Tangipahoa in lieu of the Tangipahoa Parish Police Jury.[5] On February 1, 2017, the

---

[5]Rec. Doc. No. 15, 19.

undersigned appointed *pro bono* counsel to represent Matthews after conducting the statutory frivolousness review, which resulted in the dismissal of several defendants and claims.[6]

Based on the prior rulings of the Court, Matthews is proceeding before the Court with his claims against Deputy Eady, in his individual capacity, for intentional indifference to Matthews's safety and health as well as Deputy Sospheas, in his individual capacity, for intentional indifference to Matthews's safety and for the excessive use of force.[7] Matthews, through counsel, filed a First Amended Complaint, although actually Matthews's second amendment named Shift Supervisor Chad and Tangipahoa Parish Medical Director John Doe as additional defendants and included claims of intentional indifference to his medical needs and safety against these newly added defendants.[8] Matthews also identified Deputy Doe Eady as Deputy John Eady and reasserted his claims of intentional indifference and use of excessive force, respectively, against Eady and Sergeant Doe Sospheas.

Matthews has filed the subject motion to amend, seeking to file a Second Amended Complaint to properly identify Shift Supervisor Chad and Dr. John Doe.[9] He also seeks to amend the complaint to assert new claims under state law arising from the events that occurred in the Tangipahoa Parish Jail.

---

[6] Rec. Doc. No. 14, 17.

[7] After conducting a hearing on May 17, 2016, pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), the undersigned issued a Partial Report and Recommendation resulting in the Court's dismissal with prejudice of Matthews's claims against each of the defendants in their official capacities, the Parish of Tangipahoa, the Tangipahoa Parish Police Jury, Sheriff Daniel Edwards, and Warden Lt. Doe Finn. Rec. Doc. Nos. 14, 19.

[8] The First Amended Complaint (Rec. Doc. No. 29) was filed on the deadline set by the Court for June 16, 2017 (Rec. Doc. No. 28).

[9] Rec. Doc. No. 35.

4

## II.     Standards of Review

Generally, Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id*. In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)). When denying a motion to amend, the court must have a "substantial reason" considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of the amendment.'" *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994). An amendment is deemed to be futile if it would be dismissed under a Rule 12(b)(6) motion. *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)).

"[T]he Fifth Circuit [has] clarified that when, as here, a scheduling order has been issued by the district court, Rule 16(b) governs amendment of pleadings." *Royal Ins. Co. of America v. Schubert Marine Sales*, No. 02-0916, 2003 WL 21664701, at *2 (E.D. La. July 11, 2003) (Englehardt, J.) (citing *S&W Enterprises, L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 535-36 (5th Cir. 2003)). Rule 16(b) limits changes in the deadlines set by a scheduling order "only for

5

good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  To determine if good cause exists as to untimely motions to amend pleadings, the Court should consider: "(1) the movant's explanation for its failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure that prejudice."  *Schubert Marine Sales*, 2003 WL 21664701, at *2 (citing *S&W Enterprises*, 315 F.3d at 536).  If the movant can show good cause, the Court will then apply the liberal standards of Rule 15(a).  *S&W Enterprises*, 315 F.3d at 536.

### III.     Analysis

#### A.     Review for Good Cause under Rule 16(b)(4)

As an initial matter, the Court must identify the proper standards for obtaining leave to file this amendment after the June 16, 2017, scheduling deadline passed and no extensions were sought or granted.[10]  As noted above, the proper consideration is found under Fed. R. Civ. P. 16(b)(4), which requires that Matthews make a showing of good cause for his failure to meet the Court's deadline.  Good cause will be found if the movant adequately explains the reason for the delay and the importance of the amendment and demonstrates a lack of prejudice or a cure if prejudice exists.  *S&W Enterprises*, 315 F.3d at 536.

In this case, the reason provided by Matthews for his delay is that he was unable to discern the proper names of Shift Supervisor Chad and Tangipahoa Parish Medical Director Dr. John Doe until he attempted to serve summons for the First Amended Complaint (Rec. Doc. No. 29), in which these defendants were named for the first time.  He suggests that the amendment is important because injustice would occur if these defendants were allowed to escape liability.  Matthews further contends that there is no prejudice to the defendants because no defendant has yet to answer

---

[10]*See* Rec. Doc. No. 28.

the First Amendment Complaint (which has not yet been served), there have been no pretrial dispositive motions, and discovery is ongoing.

Based on the foregoing, the Court finds that Matthews has stated good cause for his delay in presenting the Motion for Leave to File Second Amended Complaint as it relates to the naming of the defendants previously identified as Shift Supervisor Chad and Tangipahoa Parish Jail Medical Director Dr. John Doe. The Motion for Leave to File Second Amended Complaint in this regard will be further considered under the standards of Fed. R. Civ. P. 15(a) in the following section.

Matthews, however, offers no reason for his delay in asserting the state law claims against the original defendants and the recently named Shift Supervisor Chad and Dr. John Doe. In addition, unlike the desire to properly name defendants, this portion of the proposed amended complaint is prejudicial. The newly urged claims assert completely different causes of action under state law which were not asserted in the original complaint or the First Amended Complaint. The nature of these claims, some of which invoke vicarious as well as individual and official liability, are likely to lead to delays in the other deadlines already set by the District Court, including discovery and trial. For these reasons, the Court does not find good cause for Matthews' delay in seeking leave to file the newly asserted state law claims. *See S&W Enterprises, L.L.C.*, 315 F.3d at 536-37. Having found no good cause, the Motion for Leave to File Second Amended Complaint is denied, in part, under Fed. R. Civ. P. 16(b) as it relates to the inclusion of state law claims against the defendants.

### B.      Review under Fed. R. Civ. P. 15

Matthews seeks to file this Second Amended Complaint to provide proper identification of two defendants, Shift Supervisor Chad and Tangipahoa Parish Jail Medical Director Dr. John Doe.

Matthews first named Shift Supervisor Chad, in his individual and official capacities, and Medical Director Dr. John Doe, in his official capacity, in his First Amended Complaint filed on June 16, 2017. Matthews asserted § 1983 claims against these two defendants, alleging that they each implemented or encouraged unconstitutional policies and/or engaged in intentional indifference to his medical needs and safety in the prison. He now seeks leave to identify these defendants as Shift Supervisor Chad Hickey and Tangipahoa Parish Medical Director Dr. Walter Smith.

As outlined above, a court may consider several factors in resolving a motion to amend under Fed. R. Civ. P. 15(a), which include undue delay, bad faith or dilatory motive, the repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, and futility of amendment. As previously resolved, the Court does not consider Matthews to have engaged in undue delay or bad faith or cause prejudice by his counsel's efforts to amend his original pro se complaint. In fact, this is the first effort made to cure the deficiencies regarding these two defendants first appearing in the First Amended Complaint filed on June 16, 2017.

This leaves futility of the amendment as the final consideration under Rule 15(a). "It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citation omitted). In determining the futility of a proposed amendment, the Court must determine whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal quotations omitted) *In Re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)) (footnote omitted). In keeping with this standard, an amended complaint would be futile and the court need not grant leave to amend when the proposed claims are time-barred. *Newby v.*

*Enron Corp.*, 542 F.3d 463, 469 (5th Cir. 2008); *Soliz v. Bennett*, 150 F. App'x 282, 286 (5th Cir. 2005). Assuming that the allegations asserted by Matthews in his proposed Second Amended Complaint are true, he has failed to meet his burden of overcoming futility because his § 1983 claims against Shift Supervisor Chad Hickey and Tangipahoa Parish Medical Director Walter Smith, M.D., have prescribed.

The record before the Court demonstrates that the incidents of which Matthews complains occurred while he was in the custody at the Tangipahoa Parish Jail between November 23, 2015 and December 7, 2015. His complaint against the original defendants is deemed filed under the applicable prison mailbox rule on March 31, 2016.[11] Matthews, through counsel, filed the First Amended Complaint into the record on June 16, 2017. As indicated above, this is the first pleading in which Matthews attempted to assert claims against Shift Supervisor Chad and Tangipahoa Parish Jail Medical Director Dr. John Doe.

While there is no doubt that the First Amended Complaint (Rec. Doc. No. 29) was filed within the time limit set by the District Judge's scheduling order, it was not filed in accordance with Fed. R. Civ. P. 15(a), which requires either a statement of consent by the opposing parties or leave of Court. It also was filed well over one year after the incidents at issue occurred. These procedural glitches, notwithstanding, Matthews included the two defendants, Shift Supervisor Chad and Dr. John Dow, in that First Amendment Complaint. These two defendants are considered to be "John Doe" defendants whose identity was not at that time known or discernable by Matthews.

---

[11] In the prisoner context, the date prison officials receive the complaint from the prisoner for mailing to the court is the time of filing for limitations purposes. *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Matthews dated his signature on the complaint on March 31, 2016, which is the earliest date appearing in the record on which he could have given the pleadings to prison officials for mailing to this Court.

9

The Fifth Circuit does not recognize the naming of a John Doe defendant in an earlier complaint to be a mistake that would involve or cause the interruption of prescription. *See Shaidnagle v. Adams Cty., Miss.*, 88 F. Supp. 3d 705, 715-16 (S.D. Miss. 2015). Instead, "for a 'John Doe' defendant, there was no 'mistake' in identifying the correct defendant; rather, the problem was not being able to identify that defendant." *Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998); *see also Balle v. Nueces Cty., Tex.*, 690 F. App'x 847, 850-51 (5th Cir. 2017). Where there is no mistake, the amendment is not one of correction of the prior complaint, but must stand on its own accord as if naming new defendants. *Id*.

Matthews indicates in his motion that he was "not able to discern the proper names" of these two defendants until efforts were made to serve the First Amended Complaint. Therefore, under Fifth Circuit precedent, there was no mistake, but instead, an inability by Matthews to identify those John Doe defendants when the First Amendment Complaint was filed. Thus, his first effort to properly name these two defendants is this proposed Second Amended Complaint.

However, when a plaintiff does not properly identify a John Doe defendant within the limitations period applicable to § 1983, the claim against that defendant is untimely. *See Waters v. City of Hearne, Tex.*, 629 F. App'x 606, 609 (5th Cir. 2015). Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen*, 133 F.3d at 319 (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)); *see also Spikes v. Williams*, No. 14-1895, 2015 WL 1906024, at *2-3 (E.D. La. Apr. 20, 2015) (order adopting report and recommendation). In Louisiana, personal injury claims are governed by La. Civ. Code art. 3492, which provides for a prescriptive period of one year from the date of

injury or damage. *See Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

For purposes of calculating the limitations period, a § 1983 cause of action, similar to a Louisiana tort claim, accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. *Wallace*, 549 U.S. at 388; *Jacobsen*, 133 F.3d at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). The Supreme Court has held that the limitations period begins to run at the point when "the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations omitted).

Thus, for purposes of this lawsuit, Matthews would have had one year from the date of his injury or damage to bring his § 1983 claims against the defendants Hickey and Smith. Matthews was aware of his injury or damage no later than December 7, 2015, when he left the custody of the Tangipahoa Parish Jail without medication or surgery and having already been denied a liquid diet to that date.

Therefore, Matthews had until December 6, 2016, to have brought his claim against these two defendants to fall within the one year prescriptive period applicable to his § 1983 claims. He has not done so. The motion for leave to file the Second Amended Complaint was filed in this Court on August 1, 2017, almost nine months after the prescriptive period ended. The Court does not see, nor has Matthews identified, any reason that the prescriptive period should be tolled under the limited means recognized by law. *Spikes*, 2015 WL 1906024, at *3. Therefore, Matthews' claims against Hickey and Smith are prescribed, and his amendment, therefore, is futile.

## IV. <u>Conclusion</u>

For the foregoing reasons, **IT IS ORDERED** that Matthews' **Motion for Leave to File Second Amended Complaint (Rec. Doc. No. 35)** is **DENIED** pursuant to Fed. R. Civ. P. 16(b)

11

as to the state law claims and Fed. R. Civ. P. 15(a) as to the claims against Shift Supervisor Chad Hickey and Tangipahoa Parish Jail Medical Director Walter Smith, M.D.

    New Orleans, Louisiana, this 17th day of October, 2017.

    *signature*

    **KAREN WELLS ROBY**
    **CHIEF UNITED STATES MAGISTRATE JUDGE**