UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| RONALD EUGENE MATTHEWS, III | CIVIL ACTION |
| --- | --- |
| VERSUS | NO: 16-2938 |
| TANGIPAHOA PARISH POLICE JURY, ET AL. | SECTION: "J" (4) |

## ORDER AND REASONS

Before the Court is a *Motion to Dismiss* **(Rec. Doc. 78)** filed by Defendants, CorrectHealth Tangipahoa, LLC ("CorrectHealth") and Dr. Walter Smith ("Dr. Smith"). Plaintiff, Ronald E. Matthews, filed an opposition (Rec. Doc. 82). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART AND DENIED IN PART**.

## FACTS AND PROCEDURAL HISTORY

This litigation arises out of events that transpired at the Tangipahoa Parish Jail ("the Jail") from November 23, 2015 through December 7, 2015. Plaintiff alleges that on or about November 23, 2015, he had a disagreement with a fellow inmate while working in the Jail kitchen. Plaintiff alleges that Deputy Eady—the deputy supervising the kitchen at the relevant time—physically pushed Plaintiff out of the kitchen, fired him from his trustee position, told him to "get the hell out of my kitchen, you black ass boy!" and threatened, "I'm going to show you boy!" Thereafter, Deputy

1

Hickey reassigned Plaintiff to the dormitory housing the Jail's general inmate population. Plaintiff alleges that he submitted a grievance to the Jail through the Administrative Remedy Procedure ("ARP"), seeking disciplinary action against Deputy Eady for his use of racial slurs. However, the Jail's ARP Screening Officer allegedly responded that the investigation yielded no evidence that Deputy Eady said any racist remarks. Plaintiff, however, was charged with battery of a correctional facility employee as a result of the incident.

On December 2, 2015, Plaintiff alleges that he was eating a bag of chips in the U-Dormitory day room when another inmate approached him and asked to borrow a bag of chips. After Plaintiff refused, the inmate intentionally bumped into Plaintiff and punched him in the face when Plaintiff asked him to apologize. Plaintiff alleges that three other inmates then joined in and began punching Plaintiff all over his face and body. One of Plaintiff's attackers retrieved a wooden broom and began beating Plaintiff with it. Thereafter, Plaintiff alleges that the men attempted to sodomize him with the broomstick. Plaintiff then lost consciousness.

Plaintiff alleges that approximately ten or fifteen minutes after regaining consciousness, Deputy Cameron Crockett responded to the incident and took Plaintiff to the Jail medical facility for evaluation. Plaintiff was also instructed to fill out an incident report. Plaintiff alleges that Jail personnel determined that he needed to be transported to a hospital for emergency medical treatment. Plaintiff asserts that physicians at North Oaks Medical Center ("North Oaks") in Hammond, Louisiana diagnosed him with open fracture mandible, unspecified injury of rectum, suspected

adult sexual abuse, unspecified intracranial injury with loss of consciousness of unspecified duration, stress, and essential (primary) hypertension. Plaintiff also complained of pain in his right shoulder, but he was not diagnosed with a fractured shoulder while hospitalized, though he was given a sling for his arm. North Oaks scheduled Plaintiff for jaw surgery at University Medical Center on December 7, 2015.

On December 4, 2015, Plaintiff was discharged from North Oaks. Plaintiff alleges that his doctors instructed him to begin taking Cleocin (an antibiotic), Hycet (a painkiller), Zoloft (an anti-depressant), and Peridex (a topical microbial). Plaintiff asserts that his discharge instructions stated that he was to have a diet of "full liquids" and was to "get help right away" if he experienced fever, difficulty swallowing, headache, or anxiety. Plaintiff alleges that North Oaks provided the discharge instructions and prescriptions to the Jail, and Deputy Crockett was in the room when the information was communicated verbally to Plaintiff. Plaintiff alleges that upon his return to the Jail, he complained about receiving regular food at mealtime, but Deputy Hickey told Plaintiff that he could either eat what was provided or not eat at all. Plaintiff asserts that a kitchen trustee later informed him that Deputy Eady had instructed kitchen staff not to accommodate Plaintiff's liquid diet. Additionally, Plaintiff alleges that not only did he not receive his prescribed medications, he was denied Tylenol because he did not have a prescription for it.

Plaintiff alleges that during the early hours of December 5, 2015, he collapsed in his cell. He was then transported to Lallie Kemp Medical Center ("Lallie Kemp")

for treatment. Plaintiff asserts that Deputy Sospheas did not secure Plaintiff in the transport van with a safety belt and, as a result, Plaintiff fell onto the floor area of the van. Upon arrival at Lallie Kemp, Plaintiff alleges that Deputy Sospheas directed racial slurs at Plaintiff for verbalizing his inability to get out of the vehicle on his own. Plaintiff asserts that Deputy Sospheas then pulled Plaintiff out of the vehicle by his right arm, which was in a sling, causing him to hit the pavement. Plaintiff alleges that the treating physician at Lallie Kemp diagnosed him with chest wall pain, closed jaw fracture, and glenoid fracture of the right shoulder. Plaintiff also received a prescription for Glucophage, a medication used to manage high blood sugar, with "pain medication to be determined by the prison/custodial MD." Thereafter, Plaintiff was discharged and transported back to the Jail.

Upon his return to the Jail, Plaintiff alleges that a kitchen trustee informed him that Deputy Eady had promised the four inmates who attacked Plaintiff synthetic marijuana and extra food in exchange for physically harming Plaintiff. After learning this, Plaintiff submitted a grievance to the Jail under the ARP seeking disciplinary action against the four inmates who attacked him and against Deputy Eady. On December 6, 2015, Plaintiff submitted another grievance against Jail staff for refusing to give him his prescribed medication and liquid diet. In response to Plaintiff's grievance dated December 6, Plaintiff alleges that the Jail's ARP Screening Officer stated, "You were given ibuprofen. We do not give narcotics here, no matter who ordered it. To get attention you were 'donkey kicking' the door. That, I imagine, was painful."

On December 7, 2015, Jail employees did not take Plaintiff to his scheduled jaw surgery and instead transferred Plaintiff to the custody of the St. Tammany Parish Sheriff's Office. Plaintiff alleges that his prescriptions and discharge instructions from North Oaks were among his personal effects listed in the inventory he was asked to review and sign. Upon his transfer to St. Tammany Parish Jail, Plaintiff asserts that he received medical attention and a liquid diet, and his jaw surgery was rescheduled and took place on December 16, 2015.

On January 6, 2016, Plaintiff alleges that he submitted a grievance by mail to the Jail reiterating his request for disciplinary action against the four inmates who attacked him and against Deputy Eady for his role in the attack. On January 12, 2016, Plaintiff asserts that he submitted by mail an additional grievance reiterating his request for disciplinary action against the Jail staff who refused to give him his prescribed medication and liquid diet.

On April 7, 2016, Plaintiff filed a *pro se* Complaint against the Tangipahoa Parish Police Jury, Sheriff Daniel Edwards, Warden Lieutenant Doe Finn, Deputy Doe Eady, and Deputy Doe Sospheas. (Rec. Doc. 1). After a *Spears* hearing, the Court dismissed Plaintiff's claims against the Tangipahoa Parish Police Jury, Sheriff Daniel Edwards, and Warden Lieutenant Doe Finn with prejudice. (Rec. Docs. 14, 19). However, the Court permitted Plaintiff to proceed with his claims against Deputies Eady and Sospheas. (*See* Rec. Doc. 19). On June 16, 2017, Plaintiff—represented by counsel—filed a First Amended Complaint naming "Shift Supervisor Chad" and "Tangipahoa Parish Jail Medical Director Dr. John Doe" as additional defendants.

(*See* Rec. Doc. 29). On August 1, 2017, Plaintiff sought leave to file a Second Amended Complaint to properly name Chad Hickey and Walter Smith, M.D. as the "Doe" defendants referenced in the First Amended Complaint and to add certain state law claims against all defendants. (*See* Rec. Doc. 35). Plaintiff then filed a motion for leave to file a Third Amended Complaint on October 9, 2017. (*See* Rec. Doc. 39). On October 17, 2017, Magistrate Judge Roby denied Plaintiff's motion to file a Second Amended Complaint as futile because all claims against CorrectHealth[1] and Dr. Smith[2] had prescribed. (*See* Rec. Doc. 40). Plaintiff's motion for this Court to review that ruling (Rec. Doc. 43) was dismissed as moot after this Court granted Plaintiff's motion for leave to file a Third Amended Complaint on August 15, 2018. (*See* Rec. Docs. 66, 67). Plaintiff's Third Amended Complaint asserts federal and state law claims against CorrectHealth and Dr. Smith. (*See* Rec. Doc. 68). On November 20, 2018, CorrectHealth and Dr. Smith (collectively "Defendants") filed a motion to dismiss pursuant to Rule 12(b)(6) (Rec. Doc. 78), which Plaintiff opposes (Rec. Doc. 82).

### PARTIES' ARGUMENTS

1. **Defendants' Motion**

Defendants CorrectHealth and Dr. Smith argue that Plaintiff's claims against them should be dismissed without prejudice pursuant to Rule 12(b)(6). (Rec. Doc. 78). First, Defendants argue that Plaintiff's state law claims against them should be dismissed as premature and prescribed under Louisiana law because Plaintiff failed

---

[1] CorrectHealth is a private entity under contract with the Tangipahoa Parish Sheriff's Office to operate medical services within the Jail. (*See* Rec. Doc. 68 at 2).
[2] Dr. Smith was employed as the Medical Director of the Jail at all relevant times. (*See* Rec. Doc. 68 at 2-3).

6

to present the claims to a medical review panel before filing the instant suit. (Rec. Doc. 78-1 at 5). Specifically, Defendants assert that Plaintiff was required to present his various state law claims against CorrectHealth and Dr. Smith alleging failure to provide adequate medical care to a medical review panel within one year pursuant to the Louisiana Medical Malpractice Act. (Rec. Doc. 78-1 at 5, 6). Given that Plaintiff failed to do so and more than one year has passed since the events that transpired in late 2015, Defendants contend that Plaintiff's claims are premature and have also prescribed. (Rec. Doc. 78-1 at 6).

Defendants next argue that all remaining claims asserted against Defendants are prescribed. (Rec. Doc. 78-1 at 7). Specifically, Defendants assert that while Plaintiff initially filed suit on April 7, 2016, Plaintiff did not bring suit against CorrectHealth and Dr. Smith until August 2018. (Rec. Doc. 78-1 at 7). Defendants aver that the claims asserted against CorrectHealth and Dr. Smith do not relate back to the filing of Plaintiff's Original Complaint under Federal Rule of Civil Procedure 15(c) because (1) an amendment to substitute a named party for a John Doe Defendant does not relate back under the federal rules because there was no mistake in identifying the correct defendant; (2) Defendants are prejudiced by being brought into the suit untimely because they did not have constructive knowledge of the present litigation;[3] and (3) there is no identity of interest between Defendants and Deputies Eady and Sospheas—both named in the Original Complaint—because they

---

[3] Defendants point out that Plaintiff's argument that as the Tangipahoa Parish Jail's medical director, Dr. Smith should have known he would be named as a defendant in the instant suit fails because allegations against jail officials alone can be sufficient for a finding of deliberate indifference to an inmate's serious medical needs. (Rec. Doc. 78-1 at 9).

7

are represented by different counsel and employed by different entities. (Rec. Doc. 78-1 at 7).

Defendants also contend that Plaintiff's claims against Dr. Smith in his official capacity should be dismissed as duplicative of the claims against CorrectHealth. (Rec. Doc. 78-1 at 11). Finally, Defendants argue that Plaintiff has failed to plead a valid intentional infliction of emotional distress claim against Dr. Smith. (Rec. Doc. 78-1 at 12). Specifically, Defendants note that the Third Amended Complaint asserts that Dr. Smith is vicariously liable for the actions of Deputies Eady and Hickey but fails to establish an employer/employee relationship. (Rec. Doc. 78-1 at 12).

**2. Plaintiff's Opposition**

In opposition to Defendants' motion to dismiss, Plaintiff argues that dismissal is inappropriate because Plaintiff's claims are timely and plausibly state valid claims for relief. (Rec. Doc. 82 at 1). At the outset, Plaintiff argues that in resolving this motion to dismiss, the Court should not consider Defendants' exhibits, which are outside Plaintiff's Third Amended Complaint. (Rec. Doc. 82 at 4).

Next, Plaintiff contends that the Court should deny Defendants' motion to dismiss because Plaintiff's federal and state law claims against Defendants are timely. (Rec. Doc. 82 at 5). Plaintiff emphasizes that in its motion to dismiss, Defendants recognize that Plaintiff's claims are timely because "when [Plaintiff] timely sued some of the joint tortfeasors who contributed to his indivisible injuries on April 7, 2016, prescription was interrupted as to all of the joint tortfeasors, as a matter of law." (Rec. Doc. 82 at 5). Thus, Plaintiff argues that prescription had not

8

expired when Plaintiff filed his Third Amended Complaint. (Rec. Doc. 82 at 6). For this reason, Plaintiff asserts that it is unnecessary for the Court to decide the premature issue of whether Plaintiff's Third Amended Complaint relates back to his original claims. (Rec. Doc. 82 at 5).

Finally, Plaintiff asserts that Defendants' argument that all of Plaintiff's state law claims are premature under Louisiana's Medical Malpractice Act is incorrect as to Plaintiff's claim for intentional infliction of emotional distress because the Act does not encompass intentional torts. (Rec. Doc. 82 at 7). Plaintiff emphasizes that he has plausibly alleged each of the elements required to maintain a claim for intentional infliction of emotional distress, rendering dismissal at this stage inappropriate. (Rec. Doc. 82 at 7-8). Plaintiff notes that the fact "[t]hat Dr. Smith may not formally employ jail staff who contributed to [Plaintiff's] emotional injuries should not matter at this early stage of the proceeding." (Rec. Doc. 82 at 8).

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v.*

*Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## DISCUSSION

### I. Whether Plaintiff's Claims Governed by Louisiana's Medical Malpractice Act Must Be Dismissed

The Louisiana Medical Malpractice Act ("MMA") mandates that a medical malpractice claim against a private qualified healthcare provider be submitted to a Medical Review Panel before it is ripe to proceed in court. La. R.S. 40:1299.41, *et seq.* Medical malpractice claims must be filed within one year of the date of the malpractice, or within one year of the discovery of the malpractice. *Id.* In the instant case, Defendants' alleged malpractice occurred in December 2015. At the latest,

Plaintiff discovered the alleged malpractice on January 12, 2016 when he submitted a grievance to the Jail reiterating his prior request for disciplinary action against the Jail staff who refused to give him his prescribed medication and liquid diet. Although Plaintiff filed the instant lawsuit within one year of that date, he did not and has not presented the claims to a Medical Review Panel, and more than three years have passed. Plaintiff does not dispute that he failed to exhaust his state statutory remedies prior to filing suit, nor does he allege that Louisiana does not require exhaustion with respect to his malpractice claims against CorrectHealth and Dr. Smith. Accordingly, the Court finds that it is appropriate to dismiss the state law claims implicating the MMA asserted against CorrectHealth and Dr. Smith because Plaintiff failed to exhaust his state statutory remedies as required by Louisiana law.

II. **Whether All Remaining Claims Against Defendants Have Prescribed**

CorrectHealth and Dr. Smith argue that all remaining claims against them must be dismissed because they have prescribed. The parties do not contest that the applicable statute of limitations for Plaintiff's federal claims and prescriptive period for Plaintiff's state law claims is one year, which expired on December 7, 2016. Additionally, there is no question that Plaintiff filed the instant suit on April 7, 2016—well within the applicable one-year period. However, the parties dispute whether the filing of the Original Complaint on April 7, 2016 was sufficient to interrupt prescription against CorrectHealth and Dr. Smith, each of whom were named in the lawsuit *after* December 7, 2016.

Louisiana law provides that "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." La. Civ. Code art. 2324(C). When prescription is interrupted, the time that has already run is not counted, and prescription commences to run anew from the last day of the interruption. La. Civ. Code. Art. 3466. "Prescription is interrupted when . . . the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period." La. Civ. Code art. 3462. Here, the parties do not dispute that this Court is one of competent jurisdiction and venue to adjudicate the claims asserted by Plaintiff. Moreover, there is no dispute that all of the defendants in the instant case are joint tortfeasors. Thus, when Plaintiff filed his Original Complaint on April 7, 2016 suing certain named defendants, he interrupted prescription as to the remaining unnamed joint tortfeasors. *See Evans v. Edwards*, No. 14-41, 2015 WL 3454737, at *2 (E.D. La. May 29, 2015). Therefore, accepting all allegations against the defendants named in the Original Complaint as true, prescription had not accrued when Plaintiff filed his Third Amended Complaint and properly named CorrectHealth and Dr. Smith as defendants.

### III. Whether All Federal Claims Against Dr. Smith Must Be Dismissed as Duplicative of the Claims Against CorrectHealth

The Fifth Circuit has held that a plaintiff cannot maintain an action against both an employer and its agent sued in his official capacity. *See Smith v. Amedisys,*

*Inc.*, 298 F.3d 434 (5th Cir. 1999); *Moton v. Wilkinson*, 2009 WL 498487, at *1 (E.D. La. 2009); *Romero v. Becken*, 256 F.3d 349 (5th Cir. 2001). Plaintiff does not dispute this. There is also no dispute that Dr. Smith is employed by CorrectHealth and was sued only in his official capacity. Accordingly, all federal claims asserted against Dr. Smith must be dismissed as duplicative of the claims asserted against his employer, CorrectHealth.

### IV. Whether Plaintiff's Claim for Intentional Infliction of Emotional Distress Must be Dismissed

In his Third Amended Complaint, Plaintiff asserts that Dr. Smith is liable personally and under the theory of *respondeat superior* for the intentional infliction of emotional distress committed by Deputies Hickey and Eady. (Rec. Doc. 68 at 31). Under Louisiana law, a plaintiff seeking to maintain a claim for intentional infliction of emotional distress ("IIED") must establish three elements: (1) that the defendant's conduct was extreme and outrageous; (2) that the plaintiff's emotional distress was severe; and (3) that the defendant intended to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *See White v. Monsanto*, 585 So. 2d 1205, 1209 (La. 1991).

Here, Plaintiff's Third Amended Complaint alleges that Plaintiff was attacked by four inmates, leaving him with severe and painful injuries while he was incarcerated and under the care of Dr. Smith. (Rec. Doc. 68 at 5-9). While Jail employees and medical staff were aware of the attack and Plaintiff's resulting injuries, Plaintiff alleges that they knowingly withheld his prescribed medication,

13

refused to accommodate his liquid diet, and left him in his cell while he was bleeding from the mouth and in severe pain. (Rec. Doc. 68 at 5, 7-13). Even taking Plaintiff's allegations as true, Plaintiff has failed to assert facts to show that Dr. Smith's conduct renders him personally liable to Plaintiff. Plaintiff has also failed to produce any facts to suggest the existence of an employer-employee relationship between Dr. Smith and Deputies Hickey and Eady sufficient to demonstrate Dr. Smith's liability under a theory of *respondeat superior*. Accordingly, Plaintiff's IIED claim against Dr. Smith must be dismissed.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Rec. Doc. 78) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims asserted against CorrectHealth and Dr. Smith under the Louisiana Medical Malpractice Act are **DISMISSED** without prejudice. Plaintiff's claims against Dr. Smith arising under federal law are **DISMISSED** with prejudice. Plaintiff's intentional infliction of emotional distress claim against Dr. Smith is **DISMISSED** with prejudice.

New Orleans, Louisiana, this 8th day of March, 2019.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE